IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SANGMI LEE, | : | |
| --- | --- | --- |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 15-2666 |
| AMR CORPORATION, aka/dba | : | |
| AMERICAN AIRLINES, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                              June 18, 2015

Currently pending before the Court is Plaintiff Sangmi Lee's Motion to Remand. For the following reasons, the Motion is denied.

**I.    FACTUAL BACKGROUND**

According to Plaintiff's Statement of Claim filed with the Philadelphia Municipal Court:

Plaintiff, Sangmi LEE, purchased a ticket in Philadelphia on American Airlines, departing from the United States to Ladyville, Belize. Employees of American Airlines refused to allow Ms. Lee to board her plane, based on a misinterpretation of the immigration laws of Belize, resulting in Ms. Lee missing her flight to Belize and forcing her to take a flight to Guatemala, instead. Based on Defendant American Airlines [sic] failure to allow Ms. Lee to board her flight to Belize, she was forced to incur expenses in the amount of five thousand three hundred sixty one dollars and seventy six cents ($ 5361.76). . . . These expenses were only necessary based on the failure of American Airlines employees to allow Ms. Lee to board her plane as arranged. Plaintiff has made every possible effort to resolve the matter with American Airlines only to be ignored and misled further.

WHEREFORE, Plaintiff demands judgement [sic] in the amount of $5361.76, plus costs and attorney's fees, and any other relief this Court deems necessary and just.

(Def.'s Mot. to Remand, Ex. A.)

On April 17, 2015, Plaintiff sued Defendant AMR Corporation aka/dba American Airlines ("AMR") in the Philadelphia Court of Common Pleas, Municipal Court (Civil) for financial damages. On May 14, 2015, Defendant removed this case based upon federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, arguing that this case is governed entirely by the Montreal Convention. Plaintiff filed the current Motion to Remand on May 14, 2015, and Defendant Responded on May 28, 2015. The Motion is now ripe for judicial review.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1441(a), a defendant may remove a civil action filed in a state court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). A defendant seeking removal of an action must file a petition for removal with the district court within thirty days of plaintiff's service of the complaint upon defendant. See 28 U.S.C. § 1446(b). "The defendants bear the burden of establishing removal jurisdiction and compliance with all pertinent procedural requirements." Winnick v. Pratt, No. Civ.A.03-1612, 2003 WL 21204467, at *1 (E.D. Pa. May 20, 2003) (citing Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)); see also Palmer v. Univ. of Med. and Dentistry of N.J., 605 F. Supp. 2d 624, 627 (D.N.J. 2009) ("A party opposing remand must show that removal was proper.").

Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court. Cook v. Soft Sheen Carson, Inc., No. Civ.A.08-1542, 2008 WL 4606305, at *1 (D.N.J. Oct. 15, 2008) (citing 28 U.S.C. § 1447(c)). Remand to the state court is appropriate for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." PAS v. Travelers Ins. Co., 7 F.3d 349, 352 (3d Cir. 1993). Remand is mandatory and can occur at any time during the litigation if the court determines that it lacks federal subject

matter jurisdiction. Kimmel v. DeGasperi, No. Civ.A.00-143, 2000 WL 420639, at *1 (E.D. Pa. Apr. 7, 2000) (citing 28 U.S.C. § 1447(c)). A motion to remand the case on the basis of any defect in the removal procedure, however, must be submitted within thirty days after filing of the notice of removal under section 1446(a). 28 U.S.C. § 1447(c); N. Penn Water Auth. v. Bae Sys. Aerospace Elec., Inc., No. Civ.A.04-5030, 2005 WL 1279091, at *5 (E.D. Pa. May 25, 2005). Upon a motion to remand, "[i]t is always the removing party's burden to prove the propriety of removal, and any doubts about the existence of federal jurisdiction must be resolved in favor of remand." Lumbermans Mut. Cas. Co. v. Fishman, No. Civ.A.99-929, 1999 WL 744016, at *1 (E.D. Pa. Sep. 22, 1999) (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992)); see also Boyer, 913 F.2d at 111 ("The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'") (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).

## III. DISCUSSION

The Montreal Convention[1] is a treaty of the United States, effective November 4, 2003, which governs the rights and liabilities of international air carriers and passengers. Schaefer-Condulmari v. U.S. Airways Grp., Inc., No. Civ.A.09-1146, 2009 WL 4729882, at *4 (E.D. Pa. Dec. 8, 2009) (citing Sompo Japan Ins. Co. v. Nippon Cargo Airlines Co., Ltd., 522 F.3d 776, 779–781 (7th Cir. 2008) (discussing the history of the Warsaw and Montreal Conventions)). The Montreal Convention supersedes and replaces the earlier Warsaw Convention, is largely

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, I.C.A.O. 9740, S. Treat Doc. No. 106-45, 1999 WL 33292734 (2000) (hereinafter "Montreal Convention").

3

substantively unchanged from its predecessor treaty, and is interpreted using case law construing the Warsaw Convention. Buckwalter v. U.S. Airways, No. Civ.A.12-2586, 2014 WL 116264, at *2 (E.D. Pa. Jan. 13, 2014). The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention, art. 1(1). "[I]nternational carriage" is defined as:

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transshipment, are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party.

Id. art. 1(2).

Article 29 of the Convention goes on to provide that "[i]n the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." Id. art. 29. Neither the United States Supreme Court nor the United States Court of Appeals for the Third Circuit has explicitly addressed whether this provision of the Montreal Convention completely preempts state claims, and there has been a split of authority from courts within this Circuit. Hoffman v. Alitalia-Compagnia Aerea Italiano, S.P.A., No. Civ.A.14-5201, 21015 WL 1954461, at *2 (D.N.J. Apr. 28, 2015) (citing cases). Nonetheless, several courts within this District, as well as a multitude outside this District, have held that the Montreal Convention preempts all state law claims within its scope. See, e.g., Smith-Ligpn v. British Airways Worldwide, No. Civ.A.11-7437, 2012 WL 1382468, at *2 (E.D. Pa. Apr. 20, 2012) (dismissing breach of contract claim seeking damages for delay on theory that it was within the Montreal Convention's scope of liability and was time-barred by the

4

Convention); Schaefer-Condulmari v. U.S. Airways Grp., Inc., No. Civ.A.09-1146, 2009 WL 4729882, at *8 (E.D. Pa. Dec. 8, 2009) (finding that Montreal Convention completely preempts state law claims within its scope); see also Husmann v. Trans World Airlines, Inc., 169 F.3d 1151 (8th Cir. 1999) (holding that the Warsaw Convention completely preempts state law claims); Arif Naqvi v. Turkish Airlines, Inc., No. Civ.A.14-1066, ___ F. Supp. 3d ___, 2015 WL 7575198, at *2 (D.D.C. Feb. 23, 2015) (holding that the Montreal Convention "preempts state law remedies for claims within its 'substantive scope'"); Garrisi v. Nw. Airlines, Inc., No. Civ.A.10-12298, 2010 WL 3702374, at *5 (E.D. Mich. Sept. 16, 2010) ("[I]t is the opinion of this Court that the Warsaw and Montreal Conventions have preempted all state law causes of action for matters within their scope."); Jones v. USA 3000 Airlines, No. Civ.A.08-1855, 2009 WL 330596 (E.D. Mo. Feb. 9, 2009) (holding that the Montreal Convention completely preempts state law claims and allows removal to federal court); Knowlton v. Am. Airlines, Inc., No. Civ.A.06-854, 2007 WL 273794, at *3–4 (D. Md. Jan. 31, 2007) (same); Weiss v. El Al Israel Airlines, 433 F. Supp. 2d 361, 365 (S.D.N.Y. 2006) ("It is well settled that [Article 29] means that for all air transportation to which the Convention applies, if an action for damages, however founded, falls within one [of] the Convention's three damage provisions, the Convention provides the sole cause of action under which a claimant may seek redress for his injuries.").[2]

In the present case, Plaintiff does not assert that the Montreal Convention does not

---

[2] This Court is aware that our sister courts in the District of New Jersey have reasoned that the Montreal Convention does not completely preempt state law claims. Hoffman v. Alitalia-Compagnia Aerea Italiana S.P.A., No. Civ.A.14-5201, 2015 WL 1954461, at *3 (D.N.J. Apr. 28, 2015); DeJoseph v. Cont'l Airlines, 18 F. Supp. 3d 595, 600 (D.N.J. 2014); Constantino v. Cont'l Airlines, No. Civ.A.13-1770, 2014 WL 2587526, at *3 (D.N.J. June 9, 2014). Given the weight and persuasiveness of authority finding preemption, however, the Court cannot concur with the reasoning set forth by the District of New Jersey.

5

preempt all state law claims. Rather, she appears to assume that the Montreal Convention is preemptive and contends instead that her claim does not fall within the Convention's scope of liability because it does not involve "international carriage." Specifically, she asserts:

> What Defendant's notice of removal fails to recognize is that while Plaintiff attempted to board an American Airlines flight bound for Belize, due to the incompetence of their own employees, she was not allowed to board. She was never transported, carried or moved in any way by the Defendant or their agents. She was in fact never allowed into the terminal by the Defendant or its agents. Carriage, used in its normal parlance means the transporting of items or merchandise from one place to another. Unfortunately, Plaintiff was never transported in any sense of the word. Rather, she was denied entrance without basis. American Airline's decision to deny her entry renders the Montreal Convention inapplicable, making a remand order from this Court appropriate.

(Pl.'s Mot. to Remand 3–5.)

This restrictive interpretation of the word "carriage," however, disregards Article 19 of the Convention, which expressly covers this scenario. By its express terms, Article 19 establishes liability under the Montreal Convention for certain delays in travel:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

Montreal Convention, art. 19. In this context, "international air carriage" has repeatedly been deemed to include activities beyond actual travel. For example, in Paradis v. Ghana Airways, Ltd., 348 F. Supp. 2d 106 (S.D.N.Y. 2004), Plaintiff had purchased round-trip tickets between New York and Sierra Leone. Id. at 108. When Plaintiff went to the Sierra Leone airport on the day he was scheduled to return to the United States, he was informed by the defendant's agents that his flight had been canceled and that he should make arrangements with Ghana Airways for

6

return the next business day. Id. Anxious to get home, Plaintiff made a reservation with another air carrier for a return flight that same day. Id. Upon return to New York, Plaintiff exerted "extensive, albeit unsuccessful, efforts" to negotiate a settlement with Defendant for his out-of-pocket losses, and, six weeks later, filed a breach of contract claim against Defendant in New York state court. Id. at 109. Plaintiff argued that his claim was not preempted because it did not involve carriage. Id. at 111–12. The court disagreed and deemed the claim preempted because the airline had not breached its contract to transport the plaintiff, but merely caused a delay in the transport, which fell within the bounds of Article 19 of the Convention. Id. at 112.

Similarly, in Ikekpeazu v. Air France, No. Civ.A.04-0711, 2004 WL 2810063 (D. Conn. Dec. 6, 2004), the plaintiff, a busy surgeon, booked an Air France flight to return to the United States from Nigeria. Id. at *1. At the terminal, he checked his luggage and presented his passport. Id. An Air France employee confiscated his passport and, after the plaintiff waited over an hour, he was told there was a "security problem," that his luggage was being removed from the flight, and that he was not being permitted to board. Id. Upon checking with the American Embassy, he was told there was no problem with his passport and was able to arrange a flight home. Id. The court found that his subsequent claim for damages as a result of delay was encompassed by Article 19 of the Warsaw Convention, which is substantively identical to Article 19 of the Montreal Convention. Id. at *2. It noted that although "[m]ost Article 19 cases concern the practice of 'bumping' passengers, . . . the reason for a carrier's refusal to allow a person to board a scheduled flight is of no consequence; 'the result of a delay in transportation is the same.'" Id. at *2 n.1.

Finally, in Ratnaswamy v. Air Afrique, No. Civ.A.95-7670, 1998 WL 111652 (N.D. Ill.

7

Mar. 3, 1998), the plaintiffs had booked flights with the defendant, as part of a multi-leg trip, from Senegal to New York. Id. at *1. Despite the fact that the plaintiff had repeatedly confirmed their reservations on the flight, the defendant revoked their boarding passes over alleged concerns over identity and security. Id. at *1–2. The plaintiffs brought suit in both tort and contract due to the delay in transportation. Id. at *2. The court found that the plaintiffs' claim, which arose out of a delay in international air transportation, was governed by Article 19 of the Warsaw Convention and was, therefore, preempted. Id. at *5.

Based on the sparse allegations of Plaintiff's Complaint in this case, this Court also finds that her claims are governed by Article 19 of the Montreal Convention, thereby properly vesting jurisdiction in this Court. As part of the second segment of an multi-leg trip beginning and ending in New York, but stopping in several countries along the way, Plaintiff sought to obtain a boarding pass at the airport for her flight from Miami to Belize. (Def.'s Resp. Opp'n, Exs. B, C.) When Plaintiff approached a ticket counter to obtain a boarding pass for her flight to Belize, an agent for Defendant denied her a boarding pass due to a belief—mistaken or not—that Plaintiff did not have the required visa. A second agent likewise denied her a boarding pass on the same grounds. As a result, Plaintiff changed the destination of her flight to Guatemala, which was the next destination of her trip. (Id., Ex. B.) Plaintiff then sued for damages occasioned as a result of the delay caused by Defendant. Such allegations suggest that Plaintiff suffered a "delay" in travel as defined under the provisions of Article 19 of the Montreal Convention.[3] Given that the

---

[3] Notably, the word "delay" in article 19 has been construed to exclude situations when passengers "never leave the airport." Wolgel v. Mexicana Airlines, 821 F.2d 442 (7th Cir. 1987). In Wolgel, for example, the plaintiffs were never allowed to board the initial leg of their round-trip itinerary and received no compensation. Id. at 445. Because the claim was for total nonperformance of a contract, the Montreal Convention did not apply. Id. Where, however,

8

Montreal Convention provides substantive relief, subject-matter jurisdiction exists in this Court.

IV.     CONCLUSION

In light of the foregoing, the Court finds that Plaintiff's claims, as pled, fall within the scope of the Montreal Convention, thereby vesting subject-matter jurisdiction in this Court. Accordingly, Plaintiff's Motion to Remand must be denied.

An appropriate Order follows.

---

plaintiffs have secured somewhat immediate substitute transportation occasioned by delays or have incurred delay in a multi-leg trip, courts have refused to allow for breach of contract and have deemed the claims governed by the Warsaw or Montreal Conventions. See Naqvi, 2015 WL 7575198, at *2 (holding that the Montreal Convention "preempts state law claims within its 'substantive scope'" including claims for breach of contract where there is no allegation that the defendant completely failed to perform); Ratnaswamy, 1998 WL 111652, at *4 (holding that where a plaintiff sought damages for delay rather than total nonperformance, Montreal Convention controlled); Paradis, 348 F. Supp. 2d 106, at 112 ("A passenger cannot convert a mere delay into a contractual nonperformance by choosing to obtain more punctual conveyance). Just as the plaintiffs in the foregoing cases, Plaintiff, in this case, secured immediate transportation to Guatemala, depriving Defendant of an opportunity to remedy and perform Plaintiffs' obligations under the ticketing contract.